IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BARBARA F. JOHNSON, )
)
       Plaintiff, )
)
v. ) Case No. CIV-06-345-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Barbara F. Johnson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 24, 1950 and was 54 years old on the date she was last insured for benefits. She completed her high school education and one year of college education. Claimant previously worked as a transcriptionist, insurance clerk, and teacher's aide. Claimant alleges an inability to work beginning February 15, 2003, due to a bacterial infection, back, leg and feet pain, heart problems, and Meniere's disease.

### Procedural History

On December 30, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially

3

and upon reconsideration. Claimant appeared by video at a hearing before ALJ Lantz McClain on February 16, 2005. Claimant appeared at a teleconference center in Tulsa, Oklahoma while the ALJ conducted the hearing in McAlester, Oklahoma. By decision dated March 31, 2006, ALJ McClain found that Claimant was not disabled during the relevant time period between February 15, 2003 and March 31, 2004. The Appeals Council denied Claimant's request for review on July 28, 2006. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow her to perform her past relevant work as a secretary/insurance clerk.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to perform a proper analysis at steps two and three of the sequential evaluation; (2) failing to perform a proper analysis of Claimant's treating physician's opinion; and (3) failing to perform a proper credibility analysis.

### Step Two and Three Analysis

Claimant contends the ALJ failed to engage in a proper

evaluation at steps two and three of the sequential analysis. Specifically, Claimant asserts the ALJ (1) failed to consider her mental impairment; (2) failed to consider her heart problems as a severe impairment; (3) failed to consider Claimant's stated pain in her back, knees, wrists, elbows and cramping in her hands; and (4) failed to consider the effect of Claimant's obesity upon her other body systems.

Claimant first contends the ALJ's step two analysis does not consider her mental impairment. Claimant offers no further explanation for this position other than regurgitating stock case law for the proposition that the ALJ must consider all impairments in his evaluation. The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Claimant has not cited to evidence of even a *de minimus* showing of mental impairment and, from this Court's review, such evidence is not present in the record.

Claimant next asserts the ALJ failed to consider her heart condition as a severe impairment, finding her "alleged heart problem is medically non-determinable." (Tr. 25). Claimant relies upon the conclusions of Stephen W. Woodson, D.O. to assert the definitive existence of a heart problem. Specifically, Dr. Woodson

found in a report dated April 8, 2003 that Claimant underwent two echocardiograms - the first on an unspecified date which ostensibly showed "mild damage" and the second in September of 2002, which Dr. Woodson reports indicated "moderate heart damage." (Tr. 232). The ALJ is correct in his finding that these echocardiograms were not in the record before him. (Tr. 25). Additionally, the record does not contain medical documentation or testimony from the hearing before the ALJ to indicate any physician considered Claimant's heart condition sufficiently severe to place restrictions upon her activities. Indeed, Claimant has not received any medical treatment for a heart problem during the relevant period considered by the ALJ. Claimant did present with chest pains on January 23, 2005, well after the insured period, but Dr. Woodson concluded the pain was "non-cardiac." At that time, her cardiac enzymes were normal and her EKGs were "unremarkable." (Tr. 227). As a result, this Court cannot conclude the ALJ was in error in his findings that any heart problem claimed by Claimant was medically non-determinable.

Claimant also contends the ALJ failed to consider the pain she experienced in her back, knees, wrists, elbows and cramping in her feet in his step two analysis. The ALJ acknowledged Claimant's hospitalization on March 14, 1997, complaining of pain in her back, calf, thigh and cramping pain in her legs. He concluded, however, that the condition constituted "a temporary condition which

6

resolved with treatment." (Tr. 24). Claimant challenges this finding as "sheer speculation that cannot be substituted for evidence."

The medical records do not demonstrate Claimant sought further treatment for an extremity pain until well after the expiration of her insured status in September of 2005. (Tr. 205). Moreover, Claimant did not allege a disability based upon this condition until February 15, 2003, some six years after her hospitalization with no medical record indicating further treatment for leg pain in the intervening years. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Claimant has not met this burden by presenting medical evidence to support a disability finding based upon the alleged areas of pain. The ALJ's findings in this regard are not erroneous.

Claimant asserts the ALJ failed to consider the effect of her obesity upon her other body systems at step three. The ALJ concluded Claimant's obesity represented a severe impairment. Claimant's argument is of a more oblique nature. Claimant contends her obesity has exacerbated other medical conditions and that the ALJ failed to consider that effect. Claimant does not direct the

Court to any evidence in the record to support this position, thus, it represents sheer supposition. Without such evidence from competent medical experts, this Court cannot find the ALJ erred in his analysis.

### Opinion of Claimant's Treating Physician

Claimant argues the ALJ failed to properly analyze the opinion of her treating physician, Dr. Woodson. Dr. Woodson completed a Residual Functional Capacity to Do Work Related Activities form on February 1, 2006. On that form, Dr. Woodson concluded Claimant could sit and stand 10-15 minutes and walk for 10 minutes at any one time. During an eight hour day, he found Claimant could sit for 3-4 hours, stand for one hour and walk for one hour. Dr. Woodson found Claimant could lift and carry up to five pounds "occasionally," had limited use of her hands for repetitive movement including grasping, could not squat or climb, could occasionally crawl, handle and finger and could frequently bend and reach. Claimant also was determined to have mild restrictions on exposure to dust, fumes and gases, driving and exposure to vibrations. Dr. Woodson concluded Claimant's impairments would interfere with her ability to engage in work that required a consistent pace of production and moderately limited her ability to concentrate. He found Claimant's conditions would interfere with her ability to complete tasks in a timely fashion and would require that she be absent from work more than three times a month. (Tr.

247-249).

Admittedly, Dr. Woodson's written comments on the form are somewhat limited and even cryptic. He states Claimant's "hands cramp - have to be straightened manually" and "see physical exam." He also finds "R-R trend suggest possible nerve damage" and "a neurologist & orthopedist could provide more info." He also suggest Claimant experiences joint swelling and impaired motion. (Tr. 250).

Later, Dr. Woodson completed an addendum dated February 22, 2006 to the RFC form wherein he answered two questions: (1) "Did the claimant's conditions of Diabetes Type II, numbness and pain exist prior to March 31, 2004?" and (2) "Has the claimant been unable to work on a full time basis since March 31, 2004?" Dr. Woodson checked "yes" to both questions. (Tr. 278).

In his decision, the ALJ found Dr. Woodson's opinions should not be given controlling weight. The ALJ justifies this position by stating

> Dr. Woodson has treated the claimant. But as discussed above all the physical examinations he performed were essentially normal. It appears, therefore, that in giving the claimant such a limited RFC he must be relying on no more than her relations of symptoms. For this reason his opinion cannot be allowed controlling weight.

(Tr. 27).

This Court cannot conclude the physical examinations performed by Dr. Woodson found Claimant to be "essentially normal" as demonstrated by the ALJ's findings of severe impairment. Further,

this Court is not certain what is intended by the ALJ in using the phrase "relying on no more than her relations of symptoms." It is clear more explanation of the apparent wholesale rejection of Dr. Woodson's opinions is required from the ALJ.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's opinion lacks the specific, legitimate reasons for the rejection of Dr. Woodson's opinions. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

### Credibility Analysis

Claimant objects to the ALJ's rejection of her testimony based upon the lack of credibility. The ALJ specifically found "Claimant's credibility is substantially injured by the large number of extreme complaints she makes which are unsupported by any objectively determinable medical impairments." (Tr. 26). The ALJ

11

then sets forth the lack of substantiation in the medical record for Claimant's claims of total disability and inability to function.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ adequately referenced the evidence in the record, specifically Claimant's testimony and the medical records, in arriving at his conclusion. To the extent the evaluation is made on the record before the ALJ, this Court finds no error in his credibility analysis. However, since this matter is being remanded for obtaining further medical records and consultative evaluations, any such information will necessarily require a re-evaluation and possible modification of the ALJ's credibility conclusions. He should not hesitate to engage in a re-evaluation if the evidence warrants it.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is

12

**REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 29th day of June, 2007.

*[signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE